**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| G.W.C. DISTRIBUTORS, INC., on behalf of itself and all others similarly situated , ) ) ) ) | |
| Plaintiff, ) ) | Case No. _____ |
| vs. ) ) | **CLASS ACTION COMPLAINT** |
| CHAMPION LABORATORIES, INC., PUROLATOR FILTERS N.A. L.L.C., HONEYWELL INTERNATIONAL INC., WIX FILTRATION CORP, LLC, CUMMINS FILTRATION INC., THE DONALDSON COMPANY, BALDWIN FILTERS INC., BOSCH U.S.A., MANN + HUMMEL U.S.A., INC., ARVINMERITOR, INC., and UNITED COMPONENTS, INC. ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. ) ) | |

G.W.C. Distributors, Inc. ("Plaintiff"), by and through its undersigned counsel, brings this action for treble damages and costs of suit under the antitrust laws of the United States against Defendants (defined below) and, upon personal knowledge with respect to its own acts and upon information and belief with respect to all other matters, alleges in its complaint as follows:

## SUMMARY OF CLAIMS

1.      This case involves a massive conspiracy among the largest manufacturers of oil, air, fuel and transmission filters in the aftermarket (*i.e.*, the market for replacement filters) ("Filters") to fix, raise, maintain or stabilize prices, rig bids and allocate customers for Filters in the United States in violation of Section 1 of the Sherman Act.

2.      A substantial portion of the allegations contained herein, particularly with respect to the specifics of collusive meetings and agreements between and among the Defendants and their co-conspirators, are based on recorded conversations and the personal knowledge of and information provided by a senior sales executive ("Confidential Informant") who was employed by two Defendants during the Class Period (defined below).

3.      According to the Confidential Informant, Defendants conspired and agreed to coordinate prices, rig bids and allocate customers from at least January 1, 1999 to the present ("Class Period"). Through meetings at industry events and elsewhere and the exchange of confidential pricing materials, Defendants unlawfully agreed to the magnitude and timing of price increases, among other things, throughout the Class Period.

4.      Because of Defendants' unlawful conduct, Plaintiff and the Class (defined below) have been forced to pay supracompetitive prices for Filters and as a result have suffered antitrust injury to their business or property.

5.      Plaintiff brings this lawsuit as a class action on behalf of direct purchasers of Filters who purchased Filters in the United States from Defendants during the Class Period. This action is brought under Section 1 of the Sherman Act to enjoin this anticompetitive conduct and recover damages suffered by the Class.

## JURISDICTION AND VENUE

6.      Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to prevent and restrain violations of and to recover treble damages and the costs of this suit, including reasonable attorneys' fees, for injuries sustained by Plaintiff and the Class as a result of Defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as alleged in this Complaint.

7.      This Court has jurisdiction over the claims alleged herein under 28 U.S.C. §§ 1331 and 1337.

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. §§ 15(a) and 22 because during the Class Period, Defendants resided, transacted business, were found, or had agents in this District, and because a substantial portion of the affected interstate trade and commerce described herein has been carried out in this district.

## INTERSTATE COMMERCE

9.      The activities of Defendants and their co-conspirators, as described herein, were within the flow of and substantially affected interstate commerce.

10.     During the Class period, Defendants manufactured and sold and/or distributed substantial quantities of Filters in a continuous and uninterrupted flow of interstate and international commerce to customers located throughout the United States.

## THE PARTIES

11.     Plaintiff G.W.C. Distributors, Inc. is a corporation headquartered in Newburgh, New York.  G.W.C. Distributors, Inc. purchased Filters in the United States directly from one or more of the Defendants during the Class Period.

12.     Defendant Champion Laboratories, Inc. is a corporation headquartered at Albion, Illinois.  Champion Laboratories, Inc. manufactured and sold Filters in the United States during the Class Period.

13.     Defendant United Components, Inc. is a corporation headquartered in Evansville, Indiana.  Champion Laboratories, Inc. is a wholly-owned subsidiary of United Components, Inc.

14.     Champion Laboratories, Inc. and United Components Inc. are herein collectively referred to as "Champion."

15.     Defendant Purolator Filters N.A. L.L.C. is a limited liability corporation with its principal place of business at Fayetteville, North Carolina.  Purolator Filters N.A. L.L.C. manufactured and sold Filters in the United States during the Class Period.  Purolator Filters N.A. L.L.C. is a joint venture between defendants Bosch U.S.A. and Mann + Hummel U.S.A., Inc.

16.     Defendant Bosch U.S.A. is a company headquartered in Broadview, Illinois.

17.     Defendant Mann + Hummel U.S.A. is a company headquartered in Portage, Michigan.

18.     Defendant ArvinMeritor Inc. is a corporation headquartered in Troy, Michigan.  Prior to April 2006, Purolator Filters N.A. L.L.C. was owned by ArvinMeritor Inc.  Purolator Filters N.A. L.L.C., Bosch U.S.A., Mann + Hummel U.S.A. and ArvinMeritor Inc. are herein collectively referred to as "Purolator."

19.     Defendant Honeywell International ("Honeywell") is a corporation headquartered at Morristown, New Jersey.  Honeywell International manufactured and sold Filters in the United States during the Class Period.  Honeywell International Consumer Products Group is a division of Honeywell International located in Danbury, Connecticut and is responsible for the manufacture and sale of Filters, principally under the FRAM® brand.

20.     Defendant Wix Filtration Corp. LLC ("Wix") is a limited liability company headquartered in Gastonia, North Carolina.  Wix manufactured and sold Filters in the United States during the Class Period.

21.     Defendant Cummins Filtration Inc. ("Cummins") is a wholly-owned subsidiary of Cummins Inc. and is headquartered in Nashville, Tennessee.  Cummins manufactured and sold Filters in the United States during the Class Period.

22.     Defendant The Donaldson Company ("Donaldson") is a corporation headquartered in Minneapolis, Minnesota.  Donaldson manufactured and sold Filters in the United States during the Class Period.

23.     Defendant Baldwin Filters, Inc. ("Baldwin") is a corporation headquartered in Kearney, Nebraska.  Baldwin manufactured and sold Filters in the United States during the Class Period.

24.     Champion, Purolator, Honeywell, Wix, Donaldson, Cummins and Baldwin are collectively referred to herein as "Defendants."

## CO-CONSPIRATORS

25.     Wherever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

26.     The acts alleged in this Complaint engaged in by Defendants were performed by their officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of the Defendants' business affairs.

27.     Various other persons, firms and corporations not named as Defendants herein have participated as co-conspirators in the violations alleged herein and have aided, abetted and performed acts and made statements in furtherance thereof.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action against Defendants under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following Class:

> All persons and entities (excluding Defendants, their predecessors, parents, subsidiaries, affiliates and co-conspirators, and government entities) who purchased Filters in the United States directly from the Defendants or any of their predecessors, parents, subsidiaries, or affiliates, at any time during the period from January 1, 1999 to the present.

29.     Plaintiff does not know the exact number of Class members because such information is in the exclusive control of Defendants or their co-conspirators due to the nature of the trade and commerce involved, however, Plaintiff believes that Class members are sufficiently numerous and geographically dispersed so that joinder of all Class members is impracticable.

30.     Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of the Class members and Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is a direct purchaser of Filters and its interests are consistent with and not antagonistic to those of the other members of the Class.  In addition, Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

31.     There are questions of law or fact common to the Class:

(a)     Whether Defendants and their co-conspirators engaged in a contract, combination, or conspiracy to fix, raise, maintain or stabilize prices of Filters, rig bids or allocate customers for Filters;

(b)     Whether Defendants' contract, combination or conspiracy as alleged in this Complaint violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

(c)     Whether the conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiff and the other members of the Class;

(d)     The effect of Defendants' conspiracy on the prices of Filters sold to purchasers in the United States during the Class Period;

(e)     The appropriate nature of class-wide equitable relief; and

(f)     The appropriate measure of damages sustained by Plaintiffs and other members of the Class.

32.     These questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

33.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Treatment as a class action will permit a large number of similarly situated persons to

adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This Class action presents no difficulties in management that would preclude maintenance as a class action.

34.     Finally, the Class is readily definable and is one for which records likely exist in the files of Defendants and their co-conspirators.

## INDUSTRY BACKGROUND

35.     Filters are typically detachable units that require regular service or replacement. They are essentially fungible products.

36.     Filter manufacturers, such as Defendants, sell Filters primarily to original equipment manufacturers (*i.e.*, vehicle manufacturers for installation of Filters into new vehicles on the production floor) and "aftermarket" sellers (*i.e.*, sellers for professional or self-installation of replacement Filters). The allegations contained herein involve the Filters aftermarket.

37.     Defendants are the primary manufacturers of aftermarket Filters in the United States. Annual revenues for Filters are approximately $3-5 billion in the United States.

38.     An oil filter is found in nearly every vehicle sold in the United States and is used to decontaminate oil.  The filtration of oil in engines is essential for enhancing longevity and performance.

39.     A fuel filter is located in a vehicle's fuel line and filters out dirt and rust particles from the fuel.  They are found in most internal combustion engines.  Fuel filters improve a vehicle's performance, as the fewer contaminants present in the fuel, the more efficiently it can be burnt.

40.     An air filter is a device used in an automotive engine to prevent abrasive particulates from entering the engine's cylinders.

41.     A transmission filter prevents harmful contaminants from entering the hydraulic system, where they can increase wear and cause scoring and sticking of hydraulic control valves. Additionally, if a major part fails inside the transmission, the filter may prevent pieces of that part from contributing to a more catastrophic transmission failure.

## DEFENDANTS' UNLAWFUL CONDUCT

42.     During the Class Period, Defendants and their co-conspirators conspired, contracted or combined to fix, raise, maintain or stabilize prices, rig bids and allocate customers for Filters in the United States.  They accomplished this through, among other things, face-to-face meetings at industry trade shows and other locations and through the exchange of confidential communications regarding pricing.

43. The purpose of these secret, conspiratorial meetings, discussions and communications was to ensure that all of the Defendants agreed to participate in and implement an unlawful, continuing price-fixing scheme.

44. As a result of their unlawful agreement, Defendants implemented at least three coordinated price increases, rigged bids and allocated customers for Filters during the Class Period.

45. In formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, including:

(a) Attending meetings or otherwise engaging in discussions in the United States and elsewhere by telephone, facsimile and electronic mail regarding the sale of Filters;

(b) Agreeing to charge prices for Filters at specified levels and to allocate customers and otherwise fixing, increasing, maintaining or stabilizing the prices of Filters sold to purchasers in the United States;

(c) Agreeing not to compete for one another's customers by, among other things, not submitting prices or bids to certain customers or by submitting intentionally high prices or bids to certain customers;

(d) Selling Filters to customers in the United States and elsewhere at collusive and non-competitive prices pursuant to the agreement reached;

(e)     Accepting payment for Filters sold in the United States and elsewhere at collusive and non-competitive prices;

(f)     Communicating with one another to discuss the prices, customers, markets and price levels of Filters sold in the United States;

(g)     Authorizing or consenting to the participation of employees in the conspiracy; and

(h)     Concealing the conspiracy and conspiratorial contacts through various means.

46.     At least as early as 1999, Defendants and their co-conspirators had numerous confidential discussions with each other and exchanged extensive communications regarding pricing and customers.  This conspiratorial conduct resulted in an unlawful agreement to fix, raise, maintain or stabilize prices, rig bids and allocate customers for Filters in the United States.

47.     For example, On July 14, 1999, Purolator sent a price increase notification to its customers.  However, two weeks earlier, on June 28, 1999, a Purolator senior executive faxed the letter to his counterpart at Honeywell a letter which announced a 6-percent price increase on all Purolator-branded Filters scheduled to become effective on August 15, 1999.

48.     Defendants also had face-to-face meetings on the subject of their respective companies' contemplated price increases.  One or more of these meetings took place in May 1999 at the Heritage Show in Nashville, Tennessee, a regular meeting of participants in the Filters industry.

At this meeting, and others around this time, Defendants agreed, on behalf of their respective companies, to raise Filters prices, which they subsequently did pursuant to this agreement on numerous occasions.

49.     For example, at a meeting of Champion sales representatives in February 2004, Champion's President informed his sales team of Champion's proposed price increase and instructed them to make sure Champion's competitors followed suit in terms of timing and amount pursuant to their continuing agreement.

50.     As a result, Championh's sales representatives met with Defendants' representatives to further the conspiracy.

51.     Defendants engaged in continuous and ongoing face-to-face meetings to further their anticompetitive activities.  Many of these meetings occurred at the annual Filter Council meeting held in Nashville, Tennessee.   The Filter Council meeting was used as a vehicle to further the anticompetitive purposes of Defendants' unlawful conspiracy.

52.     In an internal company e-mail from 2004 under the subject line "Price Increases," Champion confirmed that the other Defendants were "on board" with the amount of a coordinated price increase.

53.     Pursuant to their unlawful agreement, Defendants each instituted similar price increases for Filters during the Class Period, including, but not limited to,1999, early 2004 and late 2004/early 2005.

54.     Defendants' conduct during the Class Period in collusively fixing, increasing, maintaining or stabilizing prices, rigging bids and allocating customers was for the sole purpose of foreclosing price competition in order to maintain artificially high prices for their Filters.

55.     By coordinating their pricing activities and allocating customers, Defendants have removed from Plaintiff the ability to constrain Defendants' pricing by moving (or threatening to move) its Filter business from one Defendant to another in response to price increases.

56.     Absent their coordinated activity, Defendants would have been forced to price Filters competitively or risk losing the significant business of their Filter customers.  In a competitive market, Defendants would have been forced to forego their price increases altogether, implement smaller ones, or even decrease their prices in order to retain these customers.

57.     As a result of Defendants' unlawful conspiracy, Plaintiff has been forced to pay supracompetitive prices for Defendants' Filters.

## FRAUDULENT CONCEALMENT

58.     Defendants fraudulently concealed their participation in the conspiracy alleged herein by, *inter alia*, engaging in secret meetings and communications in furtherance of the conspiracy, and by holding themselves out to the public and their customers, including plaintiff, as true competitors.

59.     Because of such fraudulent concealment and the inherently self-concealing nature of this conspiracy, Plaintiff could not have discovered the existence of this conspiracy until shortly before this action was commenced.

60.     Defendants concealed their unlawful conspiracy in several ways, including public announcements that the price increases were due to the increases in the price of steel and that they were meeting the price increases of their competitors.

61.     As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statute of limitations otherwise applicable to the allegations herein have been tolled.

## CLAIM FOR RELIEF

### (Violation of 15 U.S.C. § 1 Against All Defendants)

62.     Plaintiff repeats and realleges each allegation of this complaint as if fully set forth herein.

63.     Beginning at least as early as January 1, 1999 and continuing thereafter through the present, the exact dates being unknown to Plaintiff, Defendants contracted, combined or conspired to fix, raise, maintain or stabilize prices, rig bids and allocate customers of Filters in the United States, the purpose and effect of which is to maintain supracompetitive prices for their Filters.  This conspiracy is illegal *per se* under Section 1 of the Sherman Act, 15 U.S.C. § 1.

64.     This conspiracy consists of a continuing understanding and concert of action among Defendants to coordinate their Filter prices.

65.     This conspiracy has foreclosed and restrained competition among Defendants and caused Plaintiff and the Class to pay artificially high prices for Defendants' Filters.

66.     As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators, as alleged herein, Plaintiff and other members of the Class have been injured in their business and property in an amount not presently known in that they paid more during the Class Period for Filters than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff, individually and on behalf of the Class proposed in this Complaint, respectfully requests the following relief:

A.     That the Court certify the Class pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and adjudge Plaintiff to be an adequate representative thereof;

B.     That Defendants' unlawful combination, contract or conspiracy as alleged in this Complaint be declared, adjudicated and decreed a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.     That Plaintiff and the Class recover damages against Defendants and their co-conspirators, jointly and severally, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. § 15(a);

D.     That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner:

(1)     continuing, maintaining or renewing the contract, combination or conspiracy

alleged herein, or from engaging in any other contract, combination or

conspiracy having a similar purpose or effect, and from adopting or following

any practice, plan, program or device having a similar purpose or effect; and

(2)     communicating or causing to be communicated to any other person engaged in

the manufacture, distribution or sale of Filters information concerning prices,

customers, markets or other terms or conditions of sale of any such product

except to the extent necessary in connection with bona fide sales transactions

between the parties to such communications.

E.     That Plaintiff and the Class be awarded expenses and costs of suit, including

reasonable attorneys' fees, to the extent provided by law;

F.     That Plaintiff and the Class be awarded pre-judgment and post-judgment interest at the

highest legal rate to the extent provided by law; and

G.     That Plaintiff be awarded such additional relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff demands a trial by jury of all issues triable by jury.

Dated:  May 19, 2008                    Respectfully submitted:

Doug Dubitsky, Esq. (ct21558)
Kerry R. Callahan, Esq. (ct06569)
UPDIKE, KELLY & SPELLACY, P.C.
One State Street
Hartford, CT  06123
Telephone:  (860) 548-2600

Mark Reinhardt
Garrett D. Blanchfield
REINHARDT WENDORF & BLANCHFIELD
E1250 First National Bank Bldg.
332 Minnesota Street
St. Paul, MN  55101
Telephone: (651) 287-2100
Facsimile: (651) 287-2103

Karl L. Cambronne
Jeffrey D. Bores
CHESTNUT & CAMBRONNE, P.A.
3700 Campbell Mithun Tower
222 South Ninth Street
Minneapolis, MN 55402
Telephone:  (612) 339-7300
Facsimile:  (612) 336-2940

Christopher M. Burke
SCOTT + SCOTT

600 B Street, Suite 1500
San Diego, CA  92101
Telephone:  (619) 233-4565
Facsimile:  (619) 233-0508

*Counsel for Plaintiff*